IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

PRO SE CIVIL COMPLAINT

Case No. 8:15CV231

Rec # 80033723

### I. CASE CAPTION: Parties to this Civil Action:

Pursuant to Fed. R. Civ. P. 10(a), the names of **all** parties must appear in the case caption. The court will **not** consider a claim against any defendant who is not listed in the caption.

A. Plaintiff(s) Name(s): Address(es): Telephone No. (only if **you are NOT** a prisoner)

Billy G. Janke, 2316 N. 150th Avenue, Omaha, NE 68116  402-431-8459

B. Defendant(s) Name(s):  Address(es) If known:

Election Systems & Software, LLC, 11208 John Galt Blvd., Omaha, NE 68137

### II. STATEMENT OF CLAIM(S)

State briefly the facts of your claim. Describe how each defendant is involved. You do not need to give legal arguments or cite cases or statutes. Use as much space as you need to state the facts.

A. **When** did the events occur?

The employment discrimination events shown in section B occurred from June 25, 2013 to December 31, 2013.

B. **What** happened?

1. I had a subarachnoid hemorrhagic stroke February 17, 2013, during the time I worked at Election Systems & Software, LLC (ES&S) as a technical writer. I was paralyzed on the right side and spent six weeks at the Immanuel Medical Rehabilitation Center. On July 31, 2013, I was terminated because I was on long-term disability and was not released to return to work. ES&S is self-insured and Lincoln Financial Group administers its LTD program.

2. In April 2013, after leaving the hospital, I met with in his office to discuss my return to work plan. My wife was present at the time. I requested that I be allowed to work from home and be given shorter assignments to transition back to work. He assured me that they would work with me and I could attend therapy sessions while working. He also said they wanted me back, but I must come back "whole" and work full-time (40 hours weekly).

3. On the same day, I also met with Kathy Rinker, ES&S Senior Human Resources Manager, and LouAnne Svaigl, former ES&S Human Resources Generalist/Recruitment. Rinker said they needed to make a decision to hire a contract writer to fill in for me. At that time, I did not know they had hired someone to replace me. Rinker said she was allowed to ease her return to work after having back surgery the previous year.

4. On the same day, I also visited with Deona Schut (DeReese), IT Application Support Specialist, to fix my company-issued laptop so I could work stay in contact with my colleagues and do therapy exercises. I had access to my email. I even created the writing test and sent it to Mankin.

5. Sunday, May 5, 2013, I was taken by ambulance and readmitted to Alegent-Creighton Lakeside Hospital for two days due to a seizure. I completely blacked out.

6. On May 18, 2013, I went on long-term disability leave.

7. On June 12, 2013, my Clinical Psychologist, Dr. Deborah Hoffnung, said I could return to work by trying some small assignments from home and world through a speech therapist.

8. On Thursday, June 13, 2013, during an office visit, Rinker and Svaigl said that my co-workers missed me and the company wants me back and that I am needed in Documentation. She said that Mankin needed to know if they should get a contractor to fill in for my absence. Rinker said that I needed to provide a medical release from my doctor that okayed my return to work with a detailed plan. I did not meet with Mankin as his door was closed.

9. Monday, June 24, 2013, Mankin said that he wants me back to work when I am 100 percent. He heard that I "flunked" my neuropsychological exam. I was shocked and hurt by his comments, and said that was news to me and that the neuropsychologist said I did well in some areas and poorly in others and I am still in the early stages of recovery. He also said he heard that I had a relapse (seizure) which required re-admittance to the hospital.

10. On June 24, Dr. Margarita McGuire, my rehabilitation doctor, released me to return to work at ES&S if I was given shorter assignments. I notified Rinker that I would be returning to work July 1, 2013. I also told Lincoln Financial I was returning to work and I would not need disability benefits. Lincoln Financial stopped payment of benefits.

11. On June 25, the defendant told me to not return to work. Instead, I received a test of my writing skills to prove I was fit for employment. Dr. McGuire arranged for the test by talking directly to the defendants and fellow management. I gave my doctor and ES&S management permission to discuss a return to work plan.

12. On July 7, Mankin said I passed the writing test, but there was much more to my job than writing a software update notice. During that time, Dr. McGuire, without my knowledge or consent, rewrote an earlier medical release to say my date of return to work date was indefinite. I am sure ES&S management convinced my

rehab doctor that I could not do the job. I requested a copy of the updated medical release and was surprised to learn that Dr. McGuire changed my return to work date as "indefinite." She later told me the reason for indicating "indefinite" was to allow for flexibility on a return to work date. I resumed receiving disability benefits.

13. On July 31, 2013, in a telephone conference call with Mankin and several management members, Mankin said they couldn't wait any longer for me to return to work and it was my last day with the company. Two days later, I received a certified letter from Mankin stating that I was terminated "due to my inability to perform my essential job duties." Later, when asked, the Rinker also told me when I went on long-term disability I "was terminated per the defendant's policy." Others attending the conference call included Kathy Rogers, Senior VP Government Relations, Beverly Cavanaugh, former HR Director, Kathy Rinker and Susan Adler, former HR Specialist. My wife, Linda Janke, heard the conversation as I had my speaker-phone on.

14. On August 8, 2013, I filed a charge of discrimination against ES&S with the EEOC and it was forwarded to the NEOC for handling.

15. From October to December 2013, after receiving medical documentation from my Dr. Deborah Hoffnung, that I could return to work, I applied to several positions at ES&S, directly to ES&S and through Client Resources, Inc. (CRi), a recruiting and contract employment firm and was asked for medical documentation from my doctor to prove that I was fit for duty. Although I had informed ES&S of the medical release, Rinker denied me the opportunity to be interviewed or considered for the positions.

16. During the hiring process, Rinker, Svaigl, and Nikki Brauer (former Nikki Brant), former Client Resources, Inc., Sr. Technical Recruiter, said I was being considered for the positions and they were still processing other applications; however, once the defendant filled the positions, the defendant informed me I was not considered for the positions as I did not submit the required medical documentation with my applications to prove I was fit for work. Rinker intentionally discriminated against me by sending emails to mislead me into believing I was being considered for the positions.

17. At the time I interviewed with other companies and at ES&S, I was enrolled in a Lincoln Financial Group Return to Work program. I applied for several technical writer positions through the program and also on my own. I had two interviews with companies other than ES&S and was not asked for medical information prior to, during, or after the interviews.

18. On October 23, 2013, I told the defendant that I had a medical release if required, but the defendant did not request it. I offered the medical release documentation to Svaigl and Rinker at the time I submitted the job applications. During the same time period, I interviewed for similar positions at other companies and was not asked for medical documentation to prove I was fit for duty.

19. Between October and December 2013, I applied for, was qualified for, but was not interviewed or hired for the following positions:

- Project Documentation Manager
- Proposal Coordinator (checked on my application status October 20, 2013.)
- Technical Communications/ Writer/Coordinator (On November 24, 2013, I applied online to ES&S on CareerLink).
- Technical Writer-Direct Hire: I applied online for four positions posted by CRi for ES&S on CareerLink (On October 28, 2013, November 3, 2013, December 6, 2013, and December 13, 2013 (Application ID f23dg15y_004999_25683).
- User Technical Documentation Specialist 3006. (On November 3, 2013, I applied online for this position posted by ES&S on CareerLink.)

20. After my stroke, to the best of my knowledge, ES&S hired the following persons:
    - Laura King-Homan, User Documentation Writer, March 2013 – June 2014 (1 year 4 months, shortly after my stroke.
    - Robert Frass, Communications Manager, June 2013 – January 2015 (1 year 8 months) who oversaw four technical writers;
    - Dirk Swartz, Sr. Technical Writer, August 2013 – Present (1 year 11 months).
    - Shoshana Sumrall Frerking, Technical Writer, November 2013 - present.
    - Christina (McCrary) Cejka, Project Documentation Manager, September 2013 – Present (1 year 10 months).
    - Tamara (Fishback) Kaup, as Manager of Proposals, August 2014 – Present (11 months).
    - Michele Miller, Technical Writer, March 2014 – Present (1 year 4 months).

21. On Monday October 28, 2013, Nikki Bauer (Brandt), asked if I would be interested in a technical writing position. I sent her my resume and she replied that the client was ES&S and she saw that I recently worked there. I read the job description she sent to me and replied that it appeared to be the same one I applied for at ES&S several weeks prior. Nikki talked to Svaigl, who assured her that I was being considered for the position.

22. On Tuesday, October 22, 2013, I asked Svajgl about the status of my application for the Proposal Coordinator position. She replied that they received my application and are in the process of reviewing it and others.

23. On Wednesday, November 13, 2013, I asked Rinker and Svaigl for the statuses of my applications for the named positions. Rinker replied the same day that they were processing applications. This email acknowledges that they were aware of the positions I either applied online for or verbally requested to be considered for.

24. On Saturday, November 30, 2013, I asked Rinker for the statuses of my applications for the positions. On Monday, December 2, 2013, Rinker replied that they were processing applications.

25. On December 5, 2013, Rinker informed me that she filled the positions and I was not considered for them because I did not submit the required medical information.

26. On Thursday, December 12, 2013, I asked Nikki Bauer (Brandt) if the Technical Writer - Direct Hire position she posted on CareerLink was for ES&S. She said yes. I then asked Svajgl that I be considered for the position.

27. On Friday, December 13, 2013, I applied online for Technical Writer - Direct Hire position posted by CRi on CareerLink for ES&S.

28. On July 16, 2014, the original charge of discrimination was amended to add the issued of failure to hire.

29. In August 2014, Beverly Cavanaugh, ES&S Director of Human Resources, was no longer working at the company after I filed an amended discrimination charge with the NEOC.

30. On October 31, 2014, Rinker requested my medical records from the Lincoln Financial's independent medical doctor "to keep a complete file in case there was any need," according to the defendant. I did not send the records to her as they were confidential between my doctor, LFG's doctor, and me.

31. According to a Nebraska Equal Opportunities Commission (NEOC) investigation, Rinker perceived me to have disabilities that would prevent me from performing the duties of a Technical Writer and I was regarded as disabled. Rinker said she acted according to company policy by requiring a medical release.

32. On December 19, 2014, the NEOC found reasonable cause for discrimination regarding failure to hire.

33. On April 7, 2015, my NEOC case was closed.

## II. STATEMENT OF CLAIM(S)

An investigation of my case by the Nebraska Equal Opportunity Commission, the Commission found sufficient evidence to support Reasonable Cause for Discrimination. I am making the following claims:

I. I have a disability, record of disability, and the defendant perceived me disabled. I worked for the defendant beginning July 25, 2011, most recently as a technical writer.

- I requested an accommodation which was denied. Due to my disability, record of disability, defendants perceived me disabled, and in retaliation for my accommodation request, I was terminated.

- I applied for several positions after my termination, for which I was qualified, but defendant did not interview or hire me due to my disability, record of disability, perceiving me as disabled, and in retaliation for my accommodation request.

II. I believe I have been discriminated against on the on the basis of disability, record of disability, perceived disability, and in retaliation which are violations of The ADA Amendments Act of 2008.

III. The defendant did not train its employees in the current ADA laws and regulations, and did not have sufficient policies in place to pro-actively prevent employment discrimination. Professional background of primary defendant employees:

- Kathy Rinker, ES&S Senior Human Resources Manager: According to her LinkedIn profile, Rinker has over 29 years of HR experience, consisting of nearly 3 years in her present position, and over 11 years as HR Manager at ES&S. She should have been fully aware of the ADA law and amendments and how they should have been applied.

- LouAnne Svaigl, former ES&S Human Resources Generalist/Recruitment (8 years at ES&S). She was terminated after I filed a discrimination charge, although rehired after Beverly Cavanaugh, HR Director, left the company.

Given the level of their positions, years of experience, and the company's knowledge of making software and hardware systems for persons with disabilities, they should have been fully aware of the ADA laws.

IV. ES&S management led me to believe I would return to work due to the following actions:

- By allowing me to use a company-issued laptop at home and in the hospital to hone my skills and stay in contact with colleagues.

- By giving me a writing assignment to determine if I could perform my main responsibilities. I had to take a writing test to prove I was fit for work while none of the other applicants were required to take the test.

- By talking to me about work assignments while on FMLA, a violation of the law and company policy, led me to believe I would return to work. At a well-managed company, workers are cross-trained or replacements identified in advance. In addition, I did not have a doctor's release.

V. I have a proven record of experience in preparing and managing business proposals, and technical writing for all media. My work performance was satisfactory. In addition, I was named the Certified Professional Technical Communicator designation in March 2013 (shortly after my stroke) from the Society of Technical Communications, the oldest and largest world-wide organization of its kind. Only 16 persons held this certification at the time. I was also commended by my former employer for my work performance.

## III. STATEMENT OF JURISDICTION

Check any of the following that apply to this case (you may check more than one):

_____ United States or a federal official or agency is a party

__X__ Claim arises under the Constitution, laws or treaties of the United States

__X__ Violation of civil rights

__X__ Employment discrimination

_____ Diversity of Citizenship (a matter between citizens of different states in which the amount in controversy exceeds $75,000)

_____ Other basis for jurisdiction in federal court (explain below)

## IV. STATEMENT OF VENUE

State briefly the connection between this case and Nebraska. For example, does a party reside or do business in Nebraska? Is a party incorporated in Nebraska? Did an injury occur in Nebraska? Did the claim arise in Nebraska?

This case is connected to Nebraska as it involves an Omaha, Nebraska-based company doing business as Election Systems & Software, LLC. I was employed by ES&S as a technical writer in Omaha from July 11, 2011 until July 31, 2013. I experienced a stroke in February 2013, was terminated on July 31, 2013, and was discriminated against from October to December 2013. I filed a discrimination charge in August 2013 with the EEOC and NEOC against ES&S.

## V. RELIEF

State briefly what you want the court to do for you.

As person with a known disability, record of disability, I am seeking compensatory and punitive relief for general damages: back pay (from December 2013), front pay (until age 66), and compensatory damages; punitive damages as the defendants actions were wrongful, malicious and egregious, attorneys fees, reasonable court costs, and interest, resulting in mental anguish, inconvenience, loss of enjoyment of life, emotional pain and suffering.

Specifically: 1) Maximum monetary amount in penalties which is $200,000 (based on the number of employees) and other costs plus interest; 2) Two-year consent decree to provide for training to all managers and supervisors in ES&S' corporate, and world-wide offices, warehouses, and other locations on the requirements of the ADA, as amended; 3) Distribution of a notice reiterating ES&S' commitment to comply with the ADA; and, 4) Reaffirmation of ES&S' policy not to discriminate in violation of the ADA.

## VI. EXHAUSTION OF ADMINISTRATIVE PROCEDURES

Some claims, but not all, require exhaustion of administrative procedures. Answer the questions below to the best of your ability.

A. Have the claims which you make in this civil action been presented through any type of administrative procedure within any state or federal government agency?

   Yes ___ X ___          No _____

B. If you answered yes, state the date your claims were so presented, how they were presented, and the result of that procedure:

   On August 8, 2013, I submitted an Intake Questionnaire to the EEOC as the first step to file a discrimination charge. On August 23, 2013, the EEOC Kansas City Area Office referred my case to the Nebraska Equal Opportunity Commission.

   On October 9, 2013, based on the Nebraska Fair Employment Practice Act, I filed a Charge of Discrimination (and an Amended Charge of Discrimination) against ES&S with the Nebraska Equal Opportunity Commission ("NEOC"), Charge No. 2-13/14-10-44297-RS, and U>S> Equal Employment Commission ("EEOC"), Charge No. 32E-2014-00024, on the basis of disability and retaliation (collectively, the "Charge"). The Commission found sufficient evidence to support a reasonable cause finding that discrimination occurred as alleged regarding the issue(s) of Failure to Hire.

   **Reasonable Cause - Disability, Record of Disability, Regarded as Disabled and Retaliation - (Hiring)**

   The evidence shows the Respondent violated the statute by asking for a medical release at the pre-offer stage. While the Respondent had a legitimate reason to believe the Complainant had limitations, rather than ask the Complainant if he could perform the essential functions of the position, with or without accommodation, the Respondent asked for documentation related to his ability to work.

   **No Reasonable Cause - Disability, Record of Disability, Regarded as Disabled and Retaliation - (Reasonable Accommodation; Termination)**

   The evidence shows the Respondent did accommodate the Complainant with extended leave with the expectation the Complainant would return to work. While the Complainant believed he would be returning and brought up ideas about how that could happen, the evidence fails to show the Complainant's physicians put forth any release, with or without restrictions. Rather, the Respondent was notified the Complainant was unable to return to work, resulting in his termination.

   On April 29, 2015, the EEOC dismissed my case at my request and issued a Notice of Right to Sue.

C. If you answered no, give the reasons, if applicable, why the claims made in this action have not been presented through administrative procedures:

VII.   ARE YOU REQUESTING TRIAL BY A JURY OR BY A JUDGE? (check one):

   JURY ____X_____          JUDGE _____

VIII.  VERIFICATION

   I (we) declare under penalty of perjury that the foregoing is true and correct.

Date(s) Executed:          Signature(s) of Plaintiff(s):

*June 23, 2015*            *Billy D. Janke*

Note:

IF YOU CANNOT AFFORD TO PAY THE COURT'S FILING FEE UPON THE FILING OF YOUR COMPLAINT, THERE IS A SEPARATE FORM TO BE USED FOR APPLYING TO PROCEED IN FORMA PAUPERIS. Also, if there is more than one plaintiff in the case who wishes to proceed in forma pauperis, **each such plaintiff must submit a separate application to proceed in forma pauperis.**

I witnessed the following:

- In **March 2013**, I went to ES&S to pick up Bill's company laptop while he was in the hospital. He wanted the laptop so he could communicate with ES&S colleagues and to keep up his writing and computer skills.
- In **April 2013**, Bill and I visited with Mike Mankin in his office. Mike said Bill could attend outpatient rehabilitation therapy and work.
- I was with Bill **(Wednesday, June 12, 2013)** when Dr. Hoffnung told him in her office that he could return to work by doing short assignments, and on another occasion (**October 16, 2013** – when I picked up the signed medical release) with her assistant telling me that Dr. Hoffnung's evaluation meant that he could return to work. Her assistant said she would talk to Dr. McGuire's assistant on my behalf in person because she used to work in that area.
- I overheard a phone conversation between Bill and Mike Mankin (After **Wednesday June 12, 2013** when Bill spoke to Dr. Hoffnung about his neuropsychological evaluation results) when Bill called Mike to give him an update on his recovery progress. Mike tried to discourage him from returning to work by citing a couple examples of perceived impairments. Mike angrily shouted that he heard Bill flunked the neuropsychological exam, and that Bill returned to the hospital because he had another seizure. Bill was upset that Mike had these misperceptions.
- I was present in Dr. McGuire's office **(Wednesday, August 14, 2013)** when she told Bill that "indefinite" meant that the date was flexible depending on his recovery progress so as not to prevent him from working at the earliest opportunity.
- I attended Bill's termination conference call on **July 31, 2013**. Mike told him he was being let go because it was time to make a decision – no other reasons were mentioned.

*Linda Janke*   Date 01 / 27 / 2014

Linda Janke

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Billy G. Janke<br>2316 N. 150th Ave<br>Omaha, NE 68116 | From: | St. Louis District Office<br>Robert A. Young Bldg<br>1222 Spruce St, Rm 8.100<br>Saint Louis, MO 63103 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 32E-2014-00024 | Joseph J. Wilson,<br>State and Local Coordinator | (314) 539-7816 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

James R. Neely, Jr.,
Director

April 29, 2015
*(Date Mailed)*

cc:

ELECTION SYSTEMS & SOFTWARE, LLC
c/o Margaret C. Hershiser
KOLEY JESSEN
1125 S 103rd St, Ste 800
Omaha, NE 68124